## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**HERBERT L. McKINNEY,**

      **Petitioner,**

**vs.**                                 **CASE NO.  4:04cv124-RH/WCS**

**JAMES CROSBY,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION

This is an amended petition for writ of habeas corpus filed by Herbert L. McKinney pursuant to 28 U.S.C. § 2254.  Doc. 7.  Petitioner challenges his conviction for possession of cocaine with intent to sell, possession of less than 20 grams of cannabis, and possession of drug paraphernalia in the Circuit Court of the Second Judicial Circuit, in and for Franklin County, Florida, case number 00-179-CFA. Respondent filed an answer, doc. 23, and the record, doc. 20, and Petitioner filed a traverse, doc. 28.

**State court procedural history**

Prior to trial, Petitioner's attorney filed a motion to suppress the drug evidence acquired during a search of Petitioner's motor vehicle and surrounding area arising from a roadblock. Petitioner was driving, and there were several other people in the car. Petitioner's car was initially stopped on Highway 98 in Franklin County, Florida, and then ended up on Crooked River Road, which comes into Highway 98 from the north, where tickets were being written. An officer testified that as he approached Petitioner's car, a pill bottle was thrown from the car from the driver's side. The bottle contained 3 grams of crack cocaine. The motion to suppress was denied and Petitioner was convicted after a jury trial.

Petitioner took a direct appeal and litigated a Rule 3.850 motion. The Rule 3.850 motion was denied without a hearing. Respondent concedes that this § 2254 petition was timely filed and that state court remedies have been exhausted as to all claims.

**Procedural history in this court**

It has taken some time to get to this stage of this case. My concerns were initially set forth in a lengthy order and need not be repeated here. Doc. 31. In response to that order, Petitioner filed his affidavit. Doc. 33. Respondent directed me to the place in the record where the written roadblock guidelines were filed. Doc. 34, citing doc. 20, Ex. A, pp. 128-135. Respondent also directed me to the place in the record where the motion to suppress filed by Petitioner's counsel can be found. *Id.*, citing doc. 20, Ex. A, p. 30. Finally, Respondent provided the affidavit of Petitioner's trial attorney, Barbara Sanders. Doc. 36, Ex. A.

It was determined that this court must hold an evidentiary hearing, and the public defender was appointed to represent Petitioner.  Doc. 41.  The hearing was held on January 11, 2006.  Doc. 56 (transcript).  Respondent objected to the evidentiary hearing as the hearing commenced, and that objection must be resolved in this report and recommendation.

**Section 2254 Standard of Review**

For claims which were properly exhausted and adjudicated in state court, this court's review is limited.  "[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted). Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d)(2); 321 F.3d at 1322 (citing the statute).  Section 2254(d)(2) is satisfied "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record."  Lomholt v. Iowa, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have

independent meanings.  Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495,

1519-1520, 146  L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843,

1850, 152 L.Ed.2d 914 (2002) (citing Williams).   "[C]learly established Federal law, as

determined by the Supreme Court of the United States," refers only to holdings of the

Supreme Court, but decisions of lower federal courts may be considered to the extent

that they demonstrate how those courts applied Supreme Court  precedent.  Hawkins v.

Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if
> the state court arrives at a conclusion opposite to that reached by [the
> Supreme] Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable facts.
> Under the "unreasonable application" clause, a federal habeas court may
> grant the writ if the state court identifies the correct governing legal
> principle from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850.

The law governing ineffective assistance of counsel claims was clearly

established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066,

2068, 80 L.Ed.2d 674 (1984).  Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520;

Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850.  Under the two part test of Strickland,

Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or

omissions of counsel that are alleged not to have been the result of reasonable

professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In reviewing the claim,

"counsel is strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."  466 U.S. at

690, 104 S.Ct. at 2066.  Petitioner has a heavy burden to establish the deficient

performance prong of Strickland, by showing that "no competent counsel would have

taken the action that his counsel did take."  Fugate v. Head, 261 F.3d 1206, 1217 (11th

Cir. 2001) (citation omitted).  There are no rigid requirements, or absolute duty to

investigate a particular line of defense.  *Id.*

> Indeed, "[c]onsidering the realities of the courtroom, more is not always
> better.  Stacking defenses can hurt a case.  Good advocacy requires
> 'winnowing out' some arguments, witnesses, evidence, and so on, to
> stress others."

261 F.3d at 121 (citations omitted).

For prejudice, Petitioner must show "a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the

outcome."  466 U.S. at 694, 104 S.Ct. at 2068.

Although Strickland explained the performance and prejudice prongs of analysis,

"there is no reason . . . to approach the inquiry in the same order or even to address

both components of the inquiry if the defendant makes an insufficient showing on one."

466 U.S. at 697, 104 S.Ct. at 2069.  "If it is easier to dispose of an ineffectiveness claim

on the ground of lack of sufficient prejudice, which we expect will often be so, that

course should be followed."  *Id.*

If the state court identifies and applies the framework of Strickland in assessing

an ineffective assistance claim, its adjudication does not satisfy the "contrary to"

language of § 2254(d)(1) even if this court might have applied Strickland differently.

Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852.

To determine whether the state court's adjudication was an "unreasonable application"

of Strickland, Petitioner "must do more than show that he would have satisfied

*Strickland's* test if his claim were being analyzed in the first instance . . . .  Rather, he

must show that the [state court] applied *Strickland* to the facts of his case in an

objectively unreasonable manner."  Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing*

Williams).  "[T]he most important point is that an *unreasonable* application of federal law

is different from an *incorrect* application of federal law."  Williams v. Taylor, 529 U.S. at

410, 120 S.Ct. at 1522.

**Grounds One and Two**

These two claims concern effective assistance of counsel as to the motion to

suppress.  Ground one asserts ineffectiveness in failing to show that "the supervising

deputy sheriff lacked [a] particularized and objective basis for suspecting wrongdoing to

justify [an] investigatory detention and search during [the] roadblock."  Doc. 7.  Ground

two asserts that Petitioner's trial counsel was ineffective for failing to challenge the lack

of written guidelines for the operation of this traffic safety roadblock.  *Id.*

In particular, Petitioner alleges that he was driving on Highway 98 and was

stopped by the roadblock officers.  He asserts that the officer who stopped him took his

driver's license, registration, and insurance papers and directed him to pull over onto the

side road, Crooked River Road.  Doc. 7, p. 7.  He asserts that after waiting on Crooked

River Road, officers Mock and Register ordered him and his passengers out of the

vehicle, asked if they had any drugs, conducted a pat-down search, and allowed

everyone to return to the car.  *Id.*, p. 8.  Petitioner said he told his attorney that he then

consented to a search, not knowing he could refuse to consent.[1]  *Id.*  He said a drug

dog was walked around the car, and scales and ziplock bags were found.  *Id.*, p. 9.

Officer Mock then returned from the woods with a pill bottle containing drugs.  *Id.*

Defendant denied that these drugs were his.  *Id.*, p. 10.

### The circuit court's ruling on the Rule 3.850 motion

The trial court denied Petitioner's Rule 3.850 motion without an evidentiary

hearing.  As to grounds one and two, the state court found:

> The defendant's first two claims allege trial counsel was ineffective in her
> representation and argument of the defendant's motion to suppress.  The
> defendant alleges counsel was ineffective for failing to put forth arguments
> *which in fact were made by counsel at the February 19, 2001, hearing*.
> Counsel challenged the lack of guidelines and supervision of the
> roadblock, as well as the alleged resulting discretionary actions of the
> officers working the stop.  See Attachment 1.  Additionally, the denial of
> the defendant's motion to suppress was raised on direct appeal and the
> First District Court of Appeals found no error in the trial court's ruling.  See
> Attachment 2.  Accordingly, the defendant may not re-argue issues which
> were previously reviewed on direct appeal in the guise of ineffective
> assistance of counsel.  Furthermore, because a full suppression hearing
> took place at which defense counsel argued but lost, the defendant's
> assertions of ineffective assistance cannot satisfy the presumption under
> Strickland v. Washington, 466 U.S. 668 (1984) that counsel's actions were
> within the range of reasonable professional assistance.  See Duhart v.
> State, 778 So. 2d 462 (Fla. 3d DCA 2001).

Doc. 20, Exhibit I, pp. 1-2 (emphasis added).[2]

Parts of this ruling misapply Strickland.  That the subsidiary Fourth Amendment

claims were raised on direct appeal and rejected is not necessarily dispositive of a claim

---

[1] This assertion of fact appears once in the petition, but is not pursued.  Thus,
there is no claim that counsel was ineffective as to any issue of consent to the search.
Likewise, Respondent has not argued that the motion to suppress failed or would have
failed because Petitioner consented to the search.

[2] Attachments 1 and 2 are not part of this record.

that had the trial attorney done a better job on the Fourth Amendment claim, it would have succeeded on appeal.  Further, the fact that an attorney had a full hearing and lost does not necessarily mean that his client cannot overcome the presumption in Strickland that his or her actions were within the wide range of reasonable professional assistance.  There is no necessary correlation between the fullness of a hearing or the results of the hearing (or on appeal) and the *performance* of counsel.  If a full hearing was held, but counsel failed to argue a critical legal point or present important evidence, ineffectiveness could be shown.

The emphasized portion of the trial court's opinion, however, is adequate to reject a Strickland claim *if supported by the record*.  The first issue, then, is whether the record supports the trial court's conclusion that the arguments which Petitioner now faults his attorney for not presenting were in fact presented and argued at the motion to suppress hearing.

A second issue is whether the trial court addressed all of Petitioner's claims.  It is this second issue that is important to whether this court was required to hold an evidentiary hearing.  To determine both of these issues, this court must examine the arguments presented by Petitioner's counsel in support of the motion to suppress.

**Legal claims presented in the motion to suppress**

The motion to suppress was filed on February 15, 2001.  Doc. 20, Ex. A, pp. 30-33.  The motion relied upon a statement in the probable cause affidavit that the purpose of the checkpoint was to search "any vehicles that were suspected of transporting illegal drugs, controlled substances and paraphernalia," and alleged that the K-9 Unit, a part of the Franklin County Sheriff's office drug task force, was present.  *Id.*, R. 30.  The

attached probable cause affidavit, signed by Timothy W. Register, states that he was

"assigned to the search team at the check point to search any vehicle that were

suspected of transporting illegal drugs . . . ."  *Id.*, R. 33.  He states that he "was also to

assist in arrests and the issuance of any traffic citations needed to be written."  *Id.*

Counsel conceded in the motion that in a deposition, Major Mock (of the Franklin

County Sheriff's Office) did not know why Petitioner's vehicle was stopped on the

secondary road, but counsel alleged as fact that Petitioner was ordered to pull over on

that road.  *Id.*  Counsel argued that the primary purpose of this roadblock was general

crime control and therefore was unlawful under the holding of City of Indianapolis v.

Edmond, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000).  *Id.*, R. 31.

In Edmond, the Supreme Court found that a roadblock which had been set up for

the *primary* purpose of looking for drugs violated the Fourth Amendment.  The Court

said:  "we decline to approve a program whose primary purpose is ultimately

indistinguishable from the general interest in crime control."  531 U.S. at 44, 121 S.Ct. at

455.  The Court also said that it did not decide "whether the State may establish a

checkpoint program with the primary purpose of checking licenses or driver sobriety and

a secondary purpose of interdicting narcotics."[3]  531 U.S. at 47 n. 2, 121 S.Ct. at 457 n.

2.  The Court said that its holding "does not impair the ability of police officers to act

appropriately upon information that they properly learn during a checkpoint stop justified

---

[3] Subsequently, the Court has held that a roadblock set up briefly to stop
motorists "to ask vehicle occupants, as members of the public, for their help in providing
information about a crime in all likelihood committed by others" is constitutionally valid.
Illinois v. Lidster, 540 U.S. 419, 423-428, 124 S.Ct. 885, 889-890, 157 L.Ed.2d 843
(2004).

by a lawful primary purpose, even where such action may result in the arrest of a motorist for an offense unrelated to that purpose."[4]  531 U.S. at 48, 121 S.Ct. at 457. Edmond did not discuss the need, if any, to have written guidelines for a road block.

At the suppression hearing, Petitioner's attorney argued that the roadblock was not a legal checkpoint as defined in the Edmond case, "the Indianapolis case that came out of the U.S. Supreme Court."  *Id.*, Doc. 20, Ex. C, R. 26.  Counsel also cited two Florida Supreme Court cases, Campbell v. State, 679 So. 2d at 1168 (Fla. 1996) and State v. Jones, 483 So. 2d 433 (Fla. 1986), relied upon in Campbell.  *Id.*, R. 27, 29-30. The state cases concerned the need for written guidelines.

In Campbell, defendant was stopped at a roadblock.  It was found that he was driving with a suspended license and he was arrested.  During the search incident to the arrest, drugs were found.  The only written guidelines issued to guide the officers in conducting the roadblock were the following:  "Stop motorists on Mandarin Rd. for a traffic safety check.  Have a motorcycle w/radar on each end of check to monitor speed."  679 So. 2d at 1169.  The officers were orally instructed to stop each car passing the roadblock, inspect the driver's license, conduct a visual safety check, and divert the car to a nearby parking lot if a citation was to be written.  *Id.*  If no violations were noted, it was expected that the stop would last only about sixty seconds.  *Id.*

---

[4] The Court has also recently held that "the use of a well-trained narcotics-detection dog – one that 'does not expose noncontraband items that otherwise would remain hidden from public view,' – during a lawful traffic stop, generally does not implicate legitimate privacy interests."  Illinois v. Caballes, 543 U.S. 405, 409, 125 S.Ct. 834, 838, 160 L.Ed.2d 842 (2005), *quoting* United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).

Officers were also instructed that they had discretion to wave cars through if traffic began to back up and cause a safety concern.  *Id.*

Campbell relied upon State v. Jones, 483 So. 2d 433 (Fla. 1986), which had held that a roadblock must be governed by "a written set of uniform guidelines."  *Id.*, at 1170. The terse written guidelines in Campbell were found to be deficient because the guidelines did not "specify vehicle selection procedures, duty assignments, detention techniques, and procedures for the disposition of vehicles as set out in *Jones.*"  *Id.* Adopting the reasoning of the dissenting opinion in the case below, the court held that the oral instructions had not cured the defect.  *Id.*, at 1171.  The court commented that "the requirement of written guidelines is not merely a formality.  Rather, it is the method this Court and others have chosen to ensure that the police do not act with unbridled discretion in exercising the power to stop and restrain citizens who have manifested no conduct that would otherwise justify an intrusion on a citizen's liberty."  *Id.*, at 1172.  *See also*, Jones v. State, 800 So. 2d 351 (Fla. 4th DCA 2001) (applying Campbell, and finding the roadblock guidelines to be inadequate).  *Compare*, Rinaldo v. State, 787 So. 2d 208 (Fla. 4th DCA 2001 (finding the written guidelines to be adequate).

Petitioner's attorney argued that it was not Petitioner's burden to prove that written guidelines were provided to the officers who conducted this roadblock.  *Id.*, R. 34.   The State argued that the supervising officer knew the guidelines, and that was sufficient.  *Id.*, R. 35.  After additional testimony, the State argued that the steps to be taken during the traffic check were simple, and there was "not much procedure that an officer needs to know to conduct that inspection."  *Id.*, R. 56.  Petitioner's counsel

demanded that she be provided a copy of the written guidelines before trial, and the court agreed that she was entitled to a copy prior to trial.  *Id.*, R. 60.

### Legal analysis of grounds one and two

Ground two should be adjudicated first.  Petitioner's claim that his attorney was ineffective for failing to argue that there were no written guidelines governing the roadblock is plainly without merit.  Petitioner's counsel made an adequate "lack of written guidelines" argument using the Campbell case.  Further, there were written guidelines and those guidelines are in this record.  Doc. 20, Ex. A, R. 128-132.  There was no need for the state Rule 3.850 court to hold an evidentiary hearing on this claim since counsel's arguments were in the state record of the motion to suppress hearing. The state court's adjudication of the merits of this federal claim has not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

Ground one is another matter.  Petitioner's counsel argued that the stop had no purpose other than to search for drugs.  She based this argument upon a statement in the probable cause affidavit to that effect, though she acknowledged that in a deposition, Major Mock had said he did not know why Petitioner was stopped on Crooked River Road.  It would appear that it was her intention to question the credibility of that statement at the hearing.

This argument seemed to flow entirely from the Edmond case.  To win the argument, Petitioner's counsel had to show that  the entire roadblock was intended only to search for drugs and thus was unconstitutional under Edmond.  But the evidence

implicated another possibility that counsel did not pursue, that even if the roadblock had a legitimate purpose as to other motorists, Petitioner was detained on Crooked River road for the sole purpose of searching for drugs.

The evidentiary hearing on the motion to suppress laid to rest the first possibility. The unrebutted testimony of the officers was that the purpose of the roadblock was to conduct a safety check of vehicles, driver's licenses, and registrations.  Major Mike Mock testified that he was conducting a "traffic check out on [U.S. Highway] 98."  *Id.*, R. 17-18.  He said he and the other officers were checking for driver's licenses and registrations.  *Id.*, R. 18.  He said that the Franklin County Sheriff had guidelines for this "traffic check."  *Id.*  They also had members of the Franklin County narcotics team present.  *Id.*  He said that if they found a traffic violation, they would pull the motor vehicle off onto Crooked River Road and "while there was a ticket being wrote or a verbal warning or whatever . . . we would use the dog to walk the dog around the vehicles, K-9, and check the vehicles.  And then that's when the task force would come into play."  *Id.*, R. 18-19, 27.  If the drug dog alerted to the vehicle, "they would check the vehicle."  *Id.*, R. 27.  According to Major Mock, these were the guidelines that the officers followed.[5]  *Id.*

---

[5] On cross examination, Major Mock said that the written guidelines "should be at the sheriff's office."  *Id.*, R. 19.  He said that he should be able to produce a copy for counsel.  *Id.*, R. 20.  Major Mock said he did not provide a copy of the guidelines to the officers that day at the roadblock and admitted he had never provided a copy to Officer James, who handled the drug dog.  *Id.*  He said that the written procedures require advertisement on the radio and in the paper before the roadblock takes place.  *Id.*, R. 42-43.  He said that this particular roadblock was advertised on the radio, but he had not been able to find any newspaper advertisement of it.  *Id.*, R. 43.  Major Mock said that signs were posted ahead of the roadblock which read: "FCSO traffic stop ahead."  *Id.*, R. 25.  He said that ordinarily each officer is given a written copy of the procedures

Major Mock said that they did not find anything wrong with Petitioner's driver's license, registration, tag, seat belt, or safety equipment, and he said "I don't think there was a ticket wrote at all." *Id.*, R. 20-21.  Major Mock testified further that Petitioner was *not* directed or pulled off Highway 98, and he said that he did not know which officer stopped him.  *Id.*, R. 21.  Major Mock said that he could not "find anyone that asked [Petitioner] to pull over."  *Id.*, R. 22.  He said:  "Brad Segree dealt with the defendant and asked him to move ahead, motioned him forward, and that's when he turned off Crooked River Road."  *Id.*

Major Mock indicated that all cars coming to the roadblock were required to stop. *Id.*, R. 22.  Each officer, however, had discretion to waive a car on if he thought that traffic was backing up so as to cause a safety hazard.  *Id.*, R. 23-24.

Brad Segree, another Deputy Sheriff, testified for Petitioner that he participated in the instant roadblock.  *Id.*, R. 49.  Segree said that his procedure was to ask the driver to hand him his driver's license, registration, and proof of insurance, and he would then walk to the rear of the vehicle to see if the brake lights were working and to check for expired tags.  *Id.*, R. 52.  It was his understanding that if there was an infraction, he was to direct the vehicle into Crooked River Road "to deal with the infraction."  *Id.*  Segree was not asked whether he remembered his encounter with Petitioner.

In summary, to the extent that Petitioner faults his attorney for not making a better argument for the proposition that the roadblock in general was designed to search for drugs, that claim must fail.  Counsel cannot be faulted for making an

---

at the roadblock, but this was not done on this day.  *Id.*

argument based upon a statement in the probable cause affidavit (that the purpose of the roadblock was to search for drugs) which later turns out to lack evidentiary support. To this extent, therefore, the state court's adjudication of the merits of this federal claim has not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

But a second Rule 3.850 claim existed as explained above.  Petitioner asserted in his Rule 3.850 motion that his trial attorney failed to have him present at the suppression hearing.  Doc. 20, Exhibit H, R. 19.  He argued that had he been present, he would have testified that he did not feel he was free to drive away because the officers conducting the roadblock had seized his driver's license, motor vehicle registration, and insurance papers.  *Id.*, R. 19-20.

This claim is quite different from the claims based upon <u>Edmond</u> and <u>Campbell</u>. The claim accepts that this was a legitimate safety check roadblock.  Prolonged detention of the vehicle longer was needed only if the officer who made the safety check on Highway 98 noted an infraction and a ticket was to be written.  Major Mock acknowledged that Petitioner was not cited for anything.  Petitioner claims that the officers kept his papers and made him pull over on Crooked River Road, despite the lack of intent to issue him a traffic citation.  If this is so, the argument that in Petitioner's case, the prolonged stop was a pretext to search for drugs, presented a potentially viable defense.  Of course, had the pill bottle and the other fruits of the search been excluded by a successful motion to suppress, the outcome of Petitioner's trial probably would have been different.

Petitioner's counsel never made the argument advanced above.  It was Petitioner's contention in his Rule 3.850 motion that his attorney was ineffective for failing to make this argument.  Since Petitioner's counsel in fact never made the argument, it was unreasonable for the state Rule 3.850 court to reject Petitioner's Rule 3.850 claim by finding that she did make this argument.

### Whether this court was permitted to hold the evidentiary hearing

Respondent cites Kelley v. Secretary for Dept. of Corrections, 377 F.3d 1317 (11th Cir. 2004), *cert. denied*, 125 U.S. 2962 (2005), for the proposition that even though the state Rule 3.850 court failed to hold an evidentiary hearing and did not consider this particular claim made by Petitioner, this court is precluded from exploring the factual basis of the claim at an evidentiary hearing.  Doc. 59, pp. 3-4.

Kelley is a lengthy capital case.  There, the court set forth in detail the history of the law governing when a federal court may or should hold an evidentiary hearing in a § 2254 case.  While the court did not decide whether the requirements of the AEDPA applied, it set them forth nonetheless:

> The test AEDPA established in 1996 is even more deferential to state courts than the earlier standard:
>
> > If the applicant has failed to develop the factual basis of a claim in State court proceedings, *the court shall not hold an evidentiary hearing on the claim unless* the applicant shows that--
> >
> > > (A) the claim relies on--
> > >
> > > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (ii) a factual predicate that could
> not have been previously
> discovered through the exercise
> of due diligence; and
>
> (B) the facts underlying the claim would be
> sufficient to establish by clear and convincing
> evidence that but for constitutional error, no
> reasonable factfinder would have found the
> applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphasis added).

377 F.3d at 1336-37.  The critical predicate for the application of subsection (e)(2),

however, is that the Petitioner "has failed to develop the factual basis of a claim in State

court proceedings."

In the Kelley case, six claims had been made in the state Rule 3.850

proceedings, that:

> (1) the State destroyed certain tangible exhibits introduced into evidence
> during Sweet's prosecution; (2) due to the destruction of these exhibits,
> defense counsel could not effectively cross-examine the State's expert
> witness who testified about them; (3) the prosecution illegally suppressed
> numerous items of exculpatory evidence; (4) the prosecution improperly
> interfered with defense counsel's cross-examination of Abe Namia; (5) the
> prosecutor's closing argument to the jury contained intentional
> misstatements of fact; and (6) Kunstler and Edmund deprived Kelley of
> effective assistance of counsel.

377 F.3d at 1329-30.  The state court held an evidentiary hearing as to claims (3) (the

*Brady*[6] claim) and (6).  377 F.3d at 1330.

---

[6] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  Brady
held that "the suppression by the prosecution of evidence favorable to an accused upon
request violates due process where the evidence is material either to guilt or to
punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. at
87, 83 S.Ct. at 1196-97.

The Eleventh Circuit noted that the claims that depended upon the allegation that the State had destroyed evidence (that is, claims (1) and (2)) had been rejected by the Florida Supreme Court by a finding that the State was not at fault and therefore due process was not denied.  377 F.3d at 1329.  Apparently the circumstances resulting in the destruction of the evidence were undisputed.  Claims (4) and (5) had been rejected as a matter of law as not cognizable in a Rule 3.850 proceeding.  *Id.*  Thus, claims (1), (2), (4), and (5) probably did not need an evidentiary hearing in state or federal court.

After holding its own evidentiary hearing, the district court in <u>Kelley</u> had granted relief as to claim (3), the *Brady* claim, the same claim as to which the state court itself had provided an evidentiary hearing.  377 F.3d at 1332.  It was the propriety of *that* federal evidentiary hearing which was the subject of the court's later comments.

The Eleventh Circuit did not decide whether the pre-AEDPA or the AEDPA standard applied.  The court said that *if* the AEDPA standard applied, "the court could not have afforded Kelley an evidentiary hearing."  377 F.3d at 1341.  The court said: "Although it is the nature of *Brady* claims that the prosecution precludes the defense from obtaining important evidence before trial, we observe no indication that Rule 3.850 counsel were precluded from developing the factual basis for any of Kelley's collateral claims through the exercise of due diligence during the Rule 3.850 proceedings."  *Id.* The court also said: "the record reveals no hint that Kelley was incapable of fully developing his collateral claims in the Rule 3.850 court."  377 F.3d at 1342.

Of course, all of this is true, both before and after the AEDPA.  If the § 2254 petitioner, through his own fault, does not make a state court factual record, a federal court may not afford an evidentiary hearing to correct that error.  *See* <u>Keeney v.</u>

<u>Tamayo-Reyes</u>, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) (adopting the

cause and prejudice standard for procedural defaults to make a state factual record).

As the Supreme Court has explained, construing this provision of the AEDPA,

> For state courts to have their rightful opportunity to adjudicate federal
> rights, the prisoner must be diligent in developing the record and
> presenting, if possible, all claims of constitutional error.  If the prisoner fails
> to do so, *himself or herself contributing to the absence of a full and fair
> adjudication in state court*, § 2254(e)(2) prohibits an evidentiary hearing to
> develop the relevant claims in federal court, unless the statute's other
> stringent requirements are met.  Federal courts sitting in habeas are not
> an alternative forum for trying facts and issues which a prisoner made
> insufficient effort to pursue in state proceedings.  *Yet comity is not served
> by saying a prisoner "has failed to develop the factual basis of a claim"
> where he was unable to develop his claim in state court despite diligent
> effort.  In that circumstance, an evidentiary hearing is not barred by §
> 2254(e)(2)*.

<u>Williams v. Taylor</u>, 529 U.S. 420, 437, 120 S.Ct. 1479, 1491, 146 L.Ed.2d 435 (2000)

(emphasis added).

Petitioner here does not come within the first part of subsection (e)(2) of § 2254.

He did not "fail" to develop the factual basis of his claim as intended there.  He made all

of the factual allegations in support of his claim but, through no fault of his own, did not

get an evidentiary hearing.  The claim as alleged was potentially viable.  Therefore, it

was incumbent upon this court to provide an evidentiary hearing.

**Testimony from evidentiary hearing relating to this aspect of ground one**

Petitioner testified at the evidentiary held in this court that on October 25, 2000,

he was driving west on Highway 98 in Franklin County, Florida.  Doc. 56, p. 7.  James

"Strawberry" Williams and Donna Robinson were in the vehicle with him.  *Id*.  Petitioner

said he saw a sheriff's roadblock ahead.  *Id*.  He said that there were parked police

vehicles, but none had blue lights flashing, there was no sign to announce the

roadblock, and the police officers were not in uniform: one was in jeans and a blue shirt. *Id.*, pp. 8, 14, 31, 35.  Petitioner said that none of the officers wore name tags that day. *Id.*, p. 14.

Petitioner said he stopped and was approached by officer Steven James.  *Id.*, p. 9.  He said that James took his driver's license and car registration, and directed him to pull off to the right onto Crooked River Road.  *Id.*  Petitioner said he obeyed.  *Id.*  He had rolled his window down about ten to twelve inches when first stopped on Highway 98.  *Id.*, pp. 17, 19, 32.  He then pulled off on the right side (east) of that road (heading north).  *Id.*, p. 10.  He said that someone then directed him to move to the left side (west) of Crooked River Road and he did.  *Id.*

Petitioner said that he and his passengers were immediately directed to get out of the car and were asked if they had "anything on them."  *Id.*, p. 10.  They were told that the officers were going to search the car.  *Id.*, p. 8.  He said that then he and Williams were placed back into the car.  *Id.*, p. 11.  He said that Steven James came back and made them exit the car again, and someone walked to a ditch, and then Major Mock and James said they had found "it."  *Id.*  They would not show to him what they had found.  *Id.*, p. 12.  He said that the ditch was about 15 to 20 feet from his car window.  *Id.*, p. 17.  Beyond the ditch were bushes.  *Id.*, p. 18.  He said that then the officers searched the car.

Petitioner said that his attorney, Barbara Sanders, visited him once at the Franklin County Jail about two or three weeks before the trial.  *Id.*, p. 21.  He said he was taken to the Franklin County Courthouse three times, for his first appearance, a docket sounding day to set the trial, and on the day of the trial (February 21, 2001), but

denied that he was present on February 19, 2001, when the motion to suppress evidentiary hearing was held.  *Id.*, pp. 20, 23-24, 35-36.  He said that Sanders never told him about the suppression hearing on February 19, 2001, and he said he did not learn about that hearing until he received a copy of the trial record, months after the trial.  *Id.*, pp. 27-28.

Petitioner was in jail from the date of his arrest, October 25, 2000, until the trial. *Id.*, pp. 20-21.  Petitioner said that he told Sanders all of the things described above. *Id.*, p. 22.  Petitioner said he elected not to testify at trial on advice of Sanders due to his prior criminal record.  *Id.*, pp. 25-26.

James Williams testified that he was a passenger in the car that day.  *Id.*, p. 41. He said that an officer told Petitioner to pull to the side of Highway 98 and took Petitioner's driver's license and car registration.  *Id.*, pp. 42, 46.  He said there were three uniformed officers present.  *Id.*, p. 42.  He said that Petitioner was then told to pull to the right, onto Crooked River Road.  *Id.*  He said that as soon as Petitioner parked on Crooked River Road, the officers brought a drug dog and walked the dog around the car.  *Id.*, p. 43.

Williams said he was shown the pill bottle that the officers retrieved.  *Id.*, pp. 43-44.  He said he had not seen that bottle before.  *Id.*, p. 44.  Williams said that the officers found scales in the car after a search, but Petitioner said the scales were not his, explaining that he had loaned the car to a relative the night before.  *Id.*, p. 48.

Barbara Sanders, who served as Petitioner's trial lawyer, testified that it was her practice to go to the Franklin County Jail and meet with each client for as long as needed.  *Id.*, p. 53.  She said that it was necessary to meet with her clients at the jail

because there was no suitable place to meet with the client at the courthouse.  *Id.*, p. 62.  Sanders recalled discussing the evidence with Petitioner and met with Petitioner on several occasions.  Petitioner told her that he had been directed to pull over onto Crooked River Road.  *Id.*, p. 54.  She knew a drug dog had been used, and that the drugs were found in a pill bottle.  *Id.*  She knew that Petitioner said that the drugs in the bottle were not his.  *Id.*

Sanders said that the only issue she raised in her motion to suppress was the validity of the roadblock.  *Id.*, p. 55.  She considered the stop to be a single stop.  *Id.*, p. 66.  She said: "I don't recall anything coming up that would have made me parse the stop into pieces."  *Id.*  She said she was surprised at the testimony at the hearing about the officers waiving Petitioner through.  *Id.*, p. 64.  She was skeptical about the credibility of this testimony.[7]  *Id.*, p. 66.

Sanders could not recall if Petitioner was present at the suppression evidentiary hearing.  *Id.*, p. 55.  Sanders said that had he not been there, she would have objected and would not have waived his presence.  *Id.*  She felt that a hearing of that sort was a critical stage in the case and she would have wanted Petitioner there.  *Id.*, pp. 55-56.  She said:

> I would not waive it for him.  I don't care what you say the law is.[8]  I would not waive it for the client.  I would have him there and waive it on the record, because I don't want to be responsible for his waiver.

_____

[7] She said:   "You get that a lot, you know, he consented to the search, kind of stuff from the police, so – ." *Id.*, p. 66.

[8] Counsel for Respondent had represented in a leading question that the trial court had found that the motion to suppress evidentiary hearing was not a "critical" stage in the case.

*Id.*, p. 57.  Sanders said it was not the practice of any judge that she knew to allow the Defendant to be absent from an evidentiary hearing.  *Id.*  Sanders said that it was her practice to call "Doris" at the sheriff's office to arrange for her pretrial detention clients to be transported to the courthouse for such hearings.  *Id.*, p. 58.

Adam Ruiz, who was the prosecutor in Petitioner's case, had no memory of whether Petitioner was present at the hearing on the motion to suppress.  *Id.*, pp. 69-70.  He testified that if Petitioner had not been present, he would have raised the issue himself.  *Id.*, p. 69.  He said he was a "bear" for such details.  *Id.*

Eric Bradley Segree, a Sergeant for the Franklin County Sheriff's Office, testified that he was in uniform stationed on Highway 98 on October 25, 2000.  *Id.*, pp. 71-72.  Segree said that if he saw an infraction, it was his job to direct the vehicle to Crooked River Road and follow behind to write the ticket.  *Id.*, p. 72.  Segree said he waived Petitioner on to the next officer on Highway 98.  *Id.*, p. 73.  He said that Petitioner turned instead onto Crooked River Road.  *Id.*  Segree said that he had not told Petitioner to stop or to move to Crooked River Road, and he said that he did not take Petitioner's driver's license and registration.  *Id.*

Timothy Register, an investigator for the Franklin County Sheriff's Office, said that he was stationed on Crooked River Road and his duty there was drug enforcement, and to help with citations. *Id.*, p. 90.  He said he saw Segree standing on Highway 98 when Petitioner's car turned onto the left side of Crooked River Road.  *Id.*, p. 93.  He testified that he saw Segree throw his hands up as if to say, "I don't know why he turned in there."  *Id.*  Register was then told by Major Mock that he (Mock) saw a blue pill bottle thrown from the window of Petitioner's car.  *Id.*, p. 94.

Herbert M. Mock, who was then a Major for the Franklin County Sheriff's Office and is now Sheriff, testified that he was in charge of the roadblock operation that day. *Id.*, p. 75. A sign was posted at the beginning of the roadblock to announce that there was a checkpoint ahead. *Id.*, p. 76. He said that all of his Deputies were in uniform and the police vehicles had their blue flashing lights on. *Id.* Mock said that the officers on Highway 98 were to check driver's license, registrations, and safety equipment, and if no infractions were found, they were to allow the motorists to continue along Highway 98. *Id.*, p. 86. If an infraction was found, the officer was to direct the motorist to pull over on Crooked River Road. *Id.*, p. 87. The officer was to follow behind to Crooked River Road and write a citation. *Id.*, p. 88.

Mock said that he stood at the intersection of Highway 98 and Crooked River Road. *Id.*, p. 84. He saw Petitioner's car pull off onto Crooked River Road. *Id.*, p. 77. Petitioner's car drove to the left side of that road, and Mock testified that he saw something thrown out of the driver's window toward the ditch that ran parallel to the west side of Crooked River Road. *Id.*, pp. 77-78. He walked directly to the object and found it to be a bottle containing crack cocaine. Mock said that the bottle was on the ground 25 to 30 feet from Petitioner's vehicle. *Id.*, p. 78.

Register said he field tested the substance in the bottle retrieved by Mock and it tested positive for cocaine. *Id.*, p. 91. He said that the drug dog was walked around Petitioner's vehicle and the vehicle was searched. *Id.*, p. 92.

Steven James was the canine officer for the Apalachicola Police Department. *Id.*, p. 98. He was stationed on Crooked River Road to walk the drug dog around vehicles at the direction of other officers. *Id.*, p. 99. Petitioner's car stopped on the left

side of the road, directly behind James's vehicle. *Id.*, p. 104.  James heard Mock say

something about finding a pill bottle. *Id.*.  James then walked his drug dog around

Petitioner's vehicle.  The dog alerted (by sitting down) at both the driver's and

passenger's doors. *Id.*, p. 100.

### Findings of fact

There are too many discrepancies in Petitioner's testimony to be believable.

Petitioner said that the police lights were not flashing, the officers were not in uniform,

had no name tags, and that there was no sign on Highway 98 announcing the

roadblock.  All of that  is doubtful.  Even James, the passenger, said that the officers

were in uniform.

Petitioner said he did not attend the evidentiary hearing on the motion to

suppress, but that also is not credible.  Sanders was to be confronted at that hearing

with testimony as to what had happened that day, and she would not have blindly

conducted that hearing without her chief witness, Petitioner himself.  Ruiz would not

have allowed the hearing to take place without Petitioner, either.

The preponderance of the credible evidence is that Petitioner was at the

suppression hearing.  He had an opportunity to present evidence at that hearing that

someone took his papers and told him to turn onto Crooked River Road, but he did not.

The preponderance of the credible evidence is that instead, Petitioner was not directed

to do anything but to pull forward to the next officer on Highway 98.  Had he done so, he

would have had his papers checked and he would have been waved on down Highway

98 since there was no reason to write a traffic citation in his case.  Petitioner instead

mistakenly turned onto Crooked River Road, pulled to the left side of the road so that

his window would be closest to the bushes on the side of the road, and then threw the pill bottle out of the window.  The pill bottle came immediately into plain sight and further detention to investigate was appropriate.  The search that ensued was not assailable under the Fourth Amendment.  Accordingly, Petitioner has not shown ineffective assistance of counsel as to this last aspect of ground one.

**Ground three**

Petitioner contends that his trial attorney was ineffective for failing to cross examine law enforcement witnesses regarding material inconsistencies in their testimony.  Doc. 7, p. 5.  First, Petitioner notes that at trial, Major Mock testified that he saw the pill bottle thrown out of the window of Petitioner's car and said that it was found at least 25 to 30 feet away from the car.  Doc. 20, Exhibit D, pp. 20, 25.  Major Mock actually testified as follows:

> I went back out this morning on my way over to trial and looked at – I mean, I couldn't get exactly because the car wasn't there and the evidence.  But I would say 25 to 30 feet at least.

*Id.*, p. 25.  Petitioner points out that Deputy Register testified that he took a photograph of the pill bottle as it lay on the ground, and said on cross examination by Petitioner's attorney that the bottle was "across a ditch approximately 10 feet I would say or longer." *Id.*, pp. 36, 43.  Petitioner points out that Captain James testified that the pill bottle was "approximately 10 feet, maybe more," from Petitioner's car.  *Id.*, p. 53.  Finally, Petitioner asserts that in a deposition, Captain James said that the pill bottle was found "right beside the Petitioner's car."  Doc. 7, citing "post conviction record, vol. 1, p. 56."[9]

---

[9] The court cannot find the record cited, but will assume that this is true.

The trial court found that this to be an insufficient claim of ineffectiveness.  Doc.

20, Exhibit I, R. 88.  The court reasoned that:

> the witnesses having different recollections of the location of the pill bottle
> in relation to the car does not amount to evidence available to impeach
> them. . . .  The fact that their testimonies weren't identical in identifying the
> exact location in feet where the pill bottle was from the car did not amount
> to anything of a substantive basis for counsel to raise on cross
> examination.

*Id*.  This is correct.  The inconsistencies are trivial.  This ruling has not "resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States."  §

2254(d)(1).

As a second claim, Petitioner argues that his attorney was ineffective for failing to

cross examine Register as to whether he had stated in his probable cause affidavit that

cannabis was also found inside the pill bottle with the crack cocaine.  He argues that

Register did not so state in his affidavit, and therefore failed to report material facts.  He

argues that the jury would have concluded from this omission that the officers planted

the drugs.

The trial court rejected this claim.  It noted that while Register's probable cause

affidavit had failed to note that less than one gram of cannabis was found in the bottle

along with the three grams of cocaine, it was not ineffective assistance of counsel to fail

to cross examine Register on this point.  The court reasoned that:

> Upon analyzing by the appropriate authorities all substances found were
> properly identified and the exclusion of one item from the probable cause
> affidavit does not show a failure to report materials facts or that the
> evidence therefore must have been planted by the arresting officers.

*Id*.

This also is correct.  The omission from the probable cause affidavit that one gram of cannabis was found in the pill bottle at most shows inattention to a relatively minor detail.  It does not support an argument that the officer planted the drugs.  The more serious offense was possession of the three grams of crack cocaine in the pill bottle.  Indeed, if the drugs in the bottle had been unlawfully planted, it is more likely that the officer who prepared the probable cause affidavit would have mentioned the cannabis.  This ruling has not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Conclusion**

Accordingly, it is **RECOMMENDED** that the petition for writ of habeas corpus filed by Herbert L. McKinney pursuant to 28 U.S.C. § 2254, challenging his conviction for possession of cocaine with intent to sell, possession of less than 20 grams of cannabis, and possession of drug paraphernalia in the Circuit Court of the Second Judicial Circuit, in and for Franklin County, Florida, case number 00-179-CFA, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on March 2, 2006.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**